AUSA: Remy Grosbard

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**25 MAG 802**

UNITED STATES OF AMERICA

v.

SUNIL PATEL,
RATANSHA VAKIL, and
LAKHMICHAND LOHANI,

                        Defendants.

**SEALED COMPLAINT**

Violations of 18 U.S.C. §§ 1344, 1349,
1956, and 2

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

ANDREW LEWIS, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

**COUNT ONE**
**(Conspiracy to Commit Money Laundering)**

1.      From at least in or about April 2023 through at least in or about December 2023, in the Southern District of New York and elsewhere, SUNIL PATEL, RATANSHA VAKIL, and LAKHMICHAND LOHANI,  the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

2.      It was a part and an object of the conspiracy that SUNIL PATEL, RATANSHA VAKIL, and LAKHMICHAND LOHANI, the defendants, and others known and unknown, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such a financial transaction, which transaction affected interstate and foreign commerce and involved the use of a financial institution which was engaged in, and the activities of which affected, interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit, wire fraud, in violation of Title 18 United States Code, Section 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

**COUNT TWO**
**(Conspiracy to Commit Bank Fraud)**

3.      From at least on or about May 19, 2023 through at least on or about May 23, 2023, in the Southern District of New York and elsewhere, SUNIL PATEL, RATANSHA VAKIL, and

LAKHMICHAND LOHANI, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit bank fraud, in violation of Title 18, United States Code, Section 1344.

4.    It was a part and an object of the conspiracy that SUNIL PATEL, RATANSHA VAKIL, LAKHMICHAND LOHANI, the defendants, and others known and unknown, knowingly would and did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, as that term is defined in Title 18, United States Code, Section 20, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such a financial institution, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344, to wit, PATEL, VAKIL, and LOHANI agreed to make and cause to be made false statements to financial institutions, including by submitting and aiding and abetting the submission of forged and altered documents, in order to obtain funds under the custody and control of those financial institutions.

(Title 18, United States Code, Section 1349.)

## COUNT THREE
### (Bank Fraud)

5.    From at least on or about May 19, 2023, through at least on or about May 23, 2023, in the Southern District of New York and elsewhere, SUNIL PATEL, RATANSHA VAKIL, LAKHMICHAND LOHANI, the defendants, knowingly executed, and attempted to execute, a scheme and artifice to defraud a financial institution, as that term is defined in Title 18, United States Code, Section 20, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such a financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, PATEL, VAKIL, and LOHANI engaged in a scheme to make false statements to financial institutions, including by submitting and aiding and abetting the submission of forged and altered documents, in order to obtain funds under the custody and control of those financial institutions.

(Title 18, United States Code, Sections 1344 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

6.    I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been an FBI Special Agent for approximately two years. As part of my work at the FBI, I have received training regarding consumer fraud and white collar crimes. I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my examination of reports and records, interviews I have conducted, and conversations with other law enforcement officers and other individuals. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, unless noted otherwise.

2

Overview

7.    As set forth below, this investigation has revealed that SUNIL PATEL, RATANSHA VAKIL, and LAKHMICHAND LOHANI, the defendants, along with other co-conspirators, have conspired to launder the proceeds of an elder fraud scheme (the "Fraud Scheme") and, in so doing, have conspired to defraud, and have defrauded, financial institutions.

8.    The Fraud Scheme worked as follows.  A perpetrator of the Fraud Scheme would contact an elderly victim by phone or email, purport to be a government official, falsely claim that the victim's personal identifying information had been compromised and/or that their financial assets were at risk, and direct the victim to send their money, via cashier's checks made to the order of limited liability companies that were controlled by RATANSHA VAKIL, the defendant (the "VAKIL LLCs"), to locations around the United States.

9.    The VAKIL LLCs include the following entities, which are discussed further below: RBV Associates LLC ("RBV"), Ox & Tiger Investors LLC ("Ox & Tiger"), Flying Ox LLC ("Flying Ox"), Kaching Tiger LLC ("Kaching Tiger"), Wings aFire Consulting LLC ("Wings aFire"), Telluride Builders LLC ("Telluride Builders"), Ox Trading LLC ("Ox Trading"), and Ox Consulting LLC ("Ox Consulting").

10.    After a victim had mailed his or her cashier's checks to a specified location, SUNIL PATEL, RATANSHA VAKIL, and LAKHMICHAND LOHANI, the defendants, along with other co-conspirators, would take steps to conceal the nature and the source of those proceeds.  A member of the conspiracy would pick up the cashier's check and deposit the check into a bank account held by one of the VAKIL LLCs.  From on or about April 12, 2023 through on or about December 13, 2023, approximately $5,354,650 of victim funds, from approximately 26 different victims, were deposited into bank accounts held by the VAKIL LLCs.

11.    After the victim funds had been deposited, RATANSHA VAKIL, the defendant, or other members of the conspiracy would transfer all or almost all of the victim funds to bank accounts held by other entities that are controlled by members of the conspiracy (the "Money Laundering Scheme").

12.    Refine Max Inc. ("Refine Max") was one of the primary entities to which the VAKIL LLCs transferred victim funds.  Refine Max, an entity that purportedly transacts in gold bullion, is controlled by LAKHMICHAND LOHANI, the defendant.  From on or about April 18, 2023 through on or about August 24, 2023, the VAKIL LLCs transferred approximately $2,470,128.30 of victim funds to Refine Max.  During this approximate time period, from on or about May 2, 2023 through on or about August 17, 2023, Refine Max, in turn, transferred approximately $453,931.22 to Patel Jewelers Inc., also known as Patel Trading ("Patel Jewelers"), which is an entity controlled by SUNIL PATEL, the defendant.

13.    During this same time period—*i.e.*, from in or about April 2023 through in or about August 2023, RATANSHA VAKIL, the defendant, and other co-conspirators maintained ledgers documenting the victim funds that were being deposited into the VAKIL LLCs' bank accounts and then transferred via wire transfers to Refine Max.  VAKIL emailed these ledgers to SUNIL PATEL, the defendant, suggesting that VAKIL was keeping PATEL apprised of the operations of the Money Laundering Scheme.  In addition, on at least three occasions, VAKIL, on behalf of one

3

of the VAKIL LLCs, received bank correspondence stating that a victim's cashier's check had been flagged as potentially fraudulent or otherwise problematic and thus deducted from the LLC's bank account. On each of these occasions, VAKIL forwarded the bank's correspondence on to PATEL, further indicating that VAKIL was reporting to PATEL about the operations of the Money Laundering Scheme.

14.    In the course of laundering the proceeds of the Fraud Scheme, as described above, SUNIL PATEL, RATANSHA VAKIL, and LAKHMICHAND LOHANI, the defendants, conspired to make, and made, material misrepresentations to financial institutions. In or about May 2023, Refine Max's bank flagged as potentially fraudulent several wire transfers of victim funds from the VAKIL LLCs to Refine Max. In response, PATEL, VAKIL, and LOHANI created fraudulent invoices for purported sales of gold bullion from Refine Max to two of the VAKIL LLCs, and LOHANI submitted these fraudulent invoices to Refine Max's bank, misrepresenting, in substance and in part, that the flagged transactions were transfers for the sale of gold bullion.

15.    In or about July 2023—*i.e.*, relatively shortly after Refine Max's bank flagged as potentially fraudulent the wire transfers between the VAKIL LLCs and Refine Max— RATANSHA VAKIL, the defendant, and other individuals who appear to have been acting at VAKIL's direction (referred to below as "Individual-1" and "Individual-2") opened new limited liability companies that were ultimately controlled by VAKIL but nominally controlled by Individual-1 and Individual-2. VAKIL used these entities to continue transferring victim funds to Refine Max, as well as to other entities controlled by or associated with SUNIL PATEL, the defendant.

### The Fraudulent Phone Calls to Elderly Victims

16.    From speaking with a particular individual who is approximately 81 years old and a victim of the Fraud Scheme ("Victim-1"), I have learned, among other things, the following:

a.    On or about July 15, 2022, Victim-1 received a phone call from an individual who claimed to be an employee of the Social Security Administration ("SSA") (the "SSA Impersonator"). The SSA Impersonator informed Victim-1, in substance and in part, that Victim-1's identity had been compromised and that, as a result, Victim-1 was under investigation. The SSA Impersonator further informed Victim-1, in substance and in part, that Victim-1 would be issued a new social security number, but first needed to, among other things, open a new bank account and transfer funds into that account. Victim-1 recalled being instructed to send cashier's checks, via the United Parcel Service ("UPS"), to "Julia" at a particular address in Chickasha, Oklahoma, from in or about February 2023 through in or about July 2023.

b.    Based on my review of bank records, I know that from on or about April 12, 2023, through on or about May 19, 2023, Victim-1 sent approximately ten cashier's checks totaling approximately $588,671 to approximately three of the VAKIL LLCs: Ox & Tiger, Kaching Tiger, and RBV.

17.    From speaking with, and reviewing materials provided by, a particular individual who is approximately 77 years old and a victim of the Fraud Scheme ("Victim-2"), I have learned, among other things, the following:

a.      In or about February 2023, Victim-2 received a call from an individual who claimed that he worked for the U.S. Department of Treasury (the "Treasury Department Impersonator"). The Treasury Department Impersonator told Victim-2 that Victim-2's personal identifying information had been compromised and that, to protect Victim-2's finances, Victim-2 needed to put Victim-2's money into a "safe account" until Victim-2 received a new social security number. The Treasury Department Impersonator then instructed Victim-2 to mail cashier's checks to various locations, including to "Julia H." at a particular address in Chickasha, Oklahoma.

b.      Based on my review of bank records, I know that from on or about April 21, 2023, through on or about November 6, 2023, Victim-2 sent approximately fourteen cashier's checks totaling approximately $666,773 to approximately four of the VAKIL LLCs: Flying Ox, Wings Afire, Ox Consulting, and RBV.

18.    From reviewing the records of a law enforcement agent who spoke with a particular individual who is approximately 81 years old and a victim of the Fraud Scheme ("Victim-3"), I have learned, among other things, the following:

a.      At the direction of an individual who represented, in substance and in part, that he worked for the SSA and that Victim-3's information was being used illegally in multiple banks and that Victim-3 was wanted by the police and would go to jail unless Victim-3 sent money as directed to an account belonging to the SSA, Victim-3 sent cashier's checks via UPS to different locations in the United States.

b.      Based on my review of bank records, I know that from on or about April 17, 2023, through on or about May 3, 2023, Victim-3 sent four cashier's checks totaling $192,923 to two of the VAKIL LLCs: RBV and Ox & Tiger.

19.    From speaking with a particular individual who is approximately 82 years old and a victim of the Fraud Scheme ("Victim-4"), I have learned, among other things, the following:

a.      On or about May 18, 2023, Victim-4 received a call from an individual who informed Victim-4, in substance and in part, that another individual had been using Victim-4's social security number and that, as a result, Victim-4's money was now "dirty." The caller then instructed Victim-4, in substance and in part, to send cashier's checks to several individuals and entities in order to "clean" Victim-4's money and safeguard Victim-4's finances. Among other individuals and addresses, Victim-4 was directed to mail cashier's checks to "Julia H." at a particular address in Chickasha, Oklahoma.

b.      Based on my review of bank records, I have learned that from on or about May 5, 2023 through on or about May 12, 2023, Victim-4 sent approximately two checks, totaling approximately $104,480 to RBV.

## VAKIL's Interview with Law Enforcement Officers

20.    On or about January 11, 2024, law enforcement officers conducted an interview of RATANSHA VAKIL, the defendant (the "January 2024 Interview"), for purposes of obtaining a victim statement, based on information provided by a foreign law enforcement agency that

VAKIL may have been a victim of a fraud scheme based in Europe. Based on my review of the law enforcement report summarizing the January 2024 Interview, I know the following:

    a. Law enforcement officers interviewed VAKIL at a particular address in Chickasha, Oklahoma (the "Chickasha Address") and identified VAKIL based on a Texas driver's license for VAKIL. The Chickasha Address is the residence of Individual-2, whose first name and last initial are "Julia H." As noted above, Victim-1 recalled being directed by members of the Fraud Scheme to send checks to "Julia" in Chickasha, Oklahoma, and Victim-2 and Victim-4 recalled being directed by members of the Fraud Scheme to send checks to "Julia H." in Chickasha, Oklahoma. Individual-2 was also present at the Chickasha Address when law enforcement officers arrived to interview VAKIL. VAKIL informed the officers, in substance and in part, that he stays in both Texas and in Oklahoma.

    b. VAKIL stated, in substance and in part, that he was not involved in any transactions in Europe.

    c. VAKIL stated, in substance and in part, that he is the owner of several limited liability companies, including RBV, Ox & Tiger, Ox Trading, and Ox Consulting. According to notes of the January 2024 Interview, VAKIL initially described his business as "broad based IT and general consulting," but later explained that he arranges meetings for buyers and sellers of gold. In particular, VAKIL stated, in substance and in part, that, in a particular transaction, (1) a seller would contact VAKIL to say that a buyer is interested in buying gold; (2) VAKIL would be told to expect a cashier's check via UPS or FedEx; (3) VAKIL would then deposit the check and take as commission 1.5% of the funds and wire the remaining funds to an account designated by the seller.

    d. VAKIL stated, in substance and in part, that he knows the buyers from a person he met on vacation, whom VAKIL identified as SUNIL PATEL, the defendant, who owns a jewelry store in New York. VAKIL stated, in substance and in part, that he started working with PATEL in early 2023. VAKIL also stated, in substance and in part, that he could not provide more information on PATEL, but did provide a particular phone number for PATEL (the "PATEL Phone Number"). Based on my review of records from mobile services providers, I know the following:

    i. The PATEL Phone Number is subscribed to in the name of Rootul Patel and lists a particular address in Oyster Bay, New York (the "Oyster Bay Address") as the subscriber's address. Based on my review of records from the New York Department of Motor Vehicles, I know that the Oyster Bay Address is listed on PATEL's New York driver's license. In addition, based on my review of bank records, I know that the Oyster Bay Address is listed on bank account statements for PATEL, as well as for Patel Holdings, Inc. from at least in or about February 2018 through in or about July 2023.

    ii. The PATEL Phone Number had approximately 131 contacts with a particular phone number subscribed to in the name of Ratansha Vakil (the "VAKIL Phone Number") from in or about March 2023 through in or about January 2024, *i.e.*, the approximate time period of the Money Laundering Scheme.

e. VAKIL stated, in substance and in part, that PATEL would provide the wire transfer information to VAKIL by text, phone call, or photo, and that the accounts where VAKIL would wire the funds differ and belong to either businesses or individuals. VAKIL also stated, in substance and in part, that the only communication he would receive from the buyers is the cashier's check in the mail.

f. VAKIL identified an individual, referred to below as Individual-1, who VAKIL stated, in substance and in part, is VAKIL's friend in Texas and the owner of Wings aFire Consulting, which is one of the VAKIL LLCs. VAKIL stated, in substance and in part, that he arranged the introduction of Individual-1 to PATEL.

g. VAKIL gave the law enforcement agents a particular email address for himself (the "VAKIL Email Account"), which he stated, in substance and in part, is the only email address he uses.

<u>VAKIL uses RBV to transfer proceeds of the Fraud Scheme to Refine Max</u>

21. On or about November 21, 2024, a Magistrate Judge sitting in this District authorized a search warrant (the "Email Warrant") of the VAKIL Email Account, which is subscribed to in the name of Ratansha Vakil and used by RATANSHA VAKIL, the defendant.

22. Based on my review of emails obtained pursuant to the Email Warrant, my review of bank records, and my review of records from mobile services providers, I know the following:

a. On or about April 11, 2023, SUNIL PATEL, the defendant, emailed RATANSHA VAKIL, the defendant, at the VAKIL Email Account, with the subject line "TEST" and no content in the body of the email. VAKIL responded to PATEL: "Confirmed correct[.] Ratan :-)". Later that day, PATEL emailed VAKIL, again at the VAKIL Email Account, with the subject line "KYC," and attached a document entitled "Refine Max Customer Information Form." VAKIL responded that he was "on the road" but would "fill and send it back." Based on my training and experience, I know that "KYC" stands for Know Your Customer, which is a process that is intended to verify a customer's identity and assess the risks of doing business with that customer.

b. Two days later, on or about April 13, 2023, VAKIL, from the VAKIL Email Account, emailed PATEL with the subject line "Filled KYC," and attached the Refine Max Customer Information Form, which had been completed. VAKIL listed himself, "Ratansha B Vakil," as the applicant on the form and listed as contact information the VAKIL Email Account and the VAKIL Phone Number. Under "Type of Business," VAKIL wrote "Consulting services – Advisor," and under "Material Type Being Shipped," VAKIL wrote "Bullion." Under "Final Beneficiary," VAKIL wrote "RBV Associates LLC" and listed bank account information, including account and routing numbers, for RBV's bank account at a particular bank ("Bank-1"). Under references, VAKIL listed "Alankar Jeweler – New York" and "Karat 22 Jeweler – Houston." PATEL responded to VAKIL, directing VAKIL to "[e]mail him [(*i.e.*, someone else)] directly."

c. Based on my review of bank records and publicly available information, I know the following about Refine Max, Alankar Jewelers ("Alankar"), and Karat 22 Jewelers,

7

which is also known as Karat 22 Jewelers of London, Inc. ("Karat 22," and, together with Patel Jeweler and Alankar, the "PATEL Entities"):

   i.  Refine Max was incorporated in New York on or about September 14, 2009. Refine Max's registered office is located in New York, New York. LAKHMICHAND LOHANI, the defendant, is the president of Refine Max.

   ii.  Alankar was incorporated in New York on or about September 29, 1998. Alankar's registered office is located in Jackson Heights, New York. SUNIL PATEL, the defendant, is the president of Alankar.[1]

   iii.  Karat 22 was incorporated in Texas on or about April 28, 1993. Karat 22's registered office is located in Jackson Heights, New York. PATEL is the registered agent and president of Karat 22.

   iv.  Karat 22 and Refine Max engaged in financial transactions with each other at least six months before PATEL instructed VAKIL to send Refine Max the Refine Max Customer Information Form for RBV, as well as after the time period that the VAKIL LLCs transferred victim funds to Refine Max, suggesting that PATEL and LOHANI have had a financial relationship independent of VAKIL, and that PATEL may have introduced VAKIL to LOHANI for the purpose of laundering proceeds of the Fraud Scheme to Refine Max.

   d.  On or about April 13, 2023—*i.e.*, the same day that VAKIL emailed PATEL the completed Refine Max Customer Information Form for RBV and that PATEL instructed VAKIL to "email him [(*i.e.*, someone else)] directly"—VAKIL, using the VAKIL Email Address, also emailed an employee of Refine Max ("Refine Max Employee-1"), who has a Refine Max email address. This email contained the subject line "KYC," and attached a completed Refine Max Customer Information Form for RBV. The body of VAKIL's email said, "Signed & Returned as requested." The following day, April 14, 2023, VAKIL emailed Refine Max Employee-1 an image of VAKIL's Texas driver's license. Based on my review of bank records, I know the following about RBV, which is one of the VAKIL LLCs:

   i.  RBV was formed in Texas on or about May 31, 2016. VAKIL is the registered agent, governing person, and organizer of RBV according to RBV's entity formation documents filed with the Texas Secretary of State.

   ii.  According to account opening documents for Bank-1, VAKIL opened RBV's account at Bank-1 on or about July 28, 2016. RBV has at least three other bank accounts, one of which VAKIL opened, according to account opening documents, on or about April 11, 2023 at a different bank ("Bank-2"), and the other two of which VAKIL opened,

---

[1] Based on my review of law enforcement reports and records, I know that law enforcement officers were present at Alankar's location in Jackson Heights, New York on or about June 24, 2024, and interacted with an individual. Based on my of review of law enforcement reports and records and my review of body worn camera footage, I believe that that individual was SUNIL PATEL, the defendant, because he identified himself as Sunil Patel, provided the PATEL Phone Number as his contact information, and has the same appearance as the individual depicted in PATEL's New York driver's license.

according to account opening documents, on or about April 13, 2023 at yet a third and a fourth bank ("Bank-3" and "Bank-4").

e.      On or about April 17, 2023, a few days after VAKIL sent PATEL the completed Refine Max Customer Information Form for RBV, PATEL emailed VAKIL, at the VAKIL Email Address, with the subject line "Wire Instructions." The email contained a photograph of a piece of paper with the words "Bank Account Info" written by hand at the top. Printed on the paper was information for Refine Max Inc., including Refine Max's business address, website address, and bank account information, including account and routing numbers, for Refine Max (the "Refine Max Bank Account"), at a particular bank located in New York, New York ("Bank-5").

f.      Based on my review of bank records, I know that LOHANI is the account signatory on the Refine Max Bank Account and listed on account opening documents as the 100% beneficial owner of Refine Max.

g.      In addition, based on my review of bank records, I know the following about wire transfers RBV sent to Refine Max containing proceeds of the Fraud Scheme:

i.      From on or about April 12, 2023, through on or about April 28, 2023, approximately three cashier's checks, totaling approximately $242,000, from approximately three victims, including Victim-1 and Victim-2, were deposited into RBV's bank account at Bank-1. During this approximate time period, from on or about April 18, 2023 through on or about May 3, 2023, RBV, from its bank account at Bank-1, sent approximately three wire transfers, totaling approximately $238,975, to the Refine Max Bank Account.

ii.     On or about April 17, 2023, a cashier's check, which belonged to Victim-3, in the amount of approximately $49,875 was deposited into RBV's bank account at Bank-4. The next day, on or about April 18, 2023, RBV, from its bank account at Bank-4, wired approximately $49,251.56 to the Refine Max Bank Account.

iii.    From on or about April 14, 2023 through on or about May 10, 2023, approximately five cashier's checks, totaling approximately $229,648, from approximately five victims, including Victim-2, Victim-3, and Victim-4, were deposited into RBV's bank account at Bank-3. During this approximate time period, from on or about April 19, 2023 through on or about May 11, 2023, RBV, from its bank account at Bank-3, sent approximately five wire transfers, totaling approximately $226,777.40, to the Refine Max Bank Account.

iv.     On or about August 7, 2023, approximately two cashier's checks, both from Victim-2, totaling approximately $98,500, were deposited into RBV's bank account at Bank-2. The next day, on or about August 9, 2023, RBV, from its bank account at Bank-2, wired approximately $97,022.50 to the Refine Max Bank Account.

h.      Based on my training and experience, I have learned that money movement such as that described in the paragraph above—*i.e.*, where a certain amount of money flows into particular accounts and then, shortly thereafter, a substantially similar amount of money flows out of those accounts—can be indicative of laundering activity.

9

<u>VAKIL forms Flying Ox and uses it to transfer proceeds of the Fraud Scheme to Refine Max</u>

23.     Based on my review of emails obtained pursuant to the Email Warrant, my review of bank records, and my review of records from mobile services providers, I know the following:

a.     On or about April 25, 2023—*i.e.*, approximately one week after SUNIL PATEL, the defendant, emailed RATANSHA VAKIL, the defendant, the account information for the Refine Max Bank Account and RBV began making wire transfers to Refine Max—VAKIL, using the VAKIL Email Address, emailed PATEL and Refine Max Employee-1 with the subject line "KYC – Flying Ox LLC."  The body of VAKIL's email said, "Attached please find the completed KYC and License as requested. Regards Ratan 😊".  In addition to VAKIL's Texas driver's license, attached was a Refine Max Customer Information Form that had been completed.  "Ratansha B Vakil" was listed as the applicant, and the VAKIL Email Address and VAKIL Phone Number were listed as contact information.  "Flying Ox LLC" was identified under "Full Legal Name of Business" and also was listed as the "Final Beneficiary."  Bank account information for Flying Ox's bank account at a particular bank ("Bank-6") was provided.  As with the Refine Max Customer Information Form for RBV, the completed form for Flying Ox provided "Consulting services – Advisor" under "Company Information," and "Bullion" under "Material Type Being Shipped."  Also as with the Refine Max Customer Information Form for RBV, the form for Flying Ox provided that "Alankar Jeweler – New York" and "Karat 22 Jeweler – Houston"—*i.e.*, two of the PATEL Entities—were Flying Ox's references.

b.     Based on my review of bank records, I know the following about Flying Ox:

i.     Flying Ox was formed in  Oklahoma on or about April 13, 2023.  VAKIL is the registered agent and managing member of Flying Ox.

ii.     VAKIL is the signatory on bank accounts for Flying Ox that, according to account opening documents, were opened at Bank-3 and Bank-4 on or about April 14, 2023.  VAKIL is also the signatory on another bank account for Flying Ox that, according to account opening documents, was opened at Bank-6 on or about April 21, 2023.

c.     Based on my review of bank records, I know the following about wire transfers Flying Ox sent to Refine Max from on or about April 25, 2023, through on or about May 25, 2023, that appear to have been conducted to launder proceeds of the Fraud Scheme:

i.     From on or about April 21, 2023 through on or about May 17, 2023, approximately ten cashier's checks, totaling approximately $476,962, from approximately five victims, including Victim-2, were deposited into Flying Ox's bank account at Bank-6.  In addition, a check in the amount of approximately $49,991—which, based on my review of bank records from Bank-4, was all or almost all compromised of victim funds—was transferred to Flying Ox's bank account at Bank-6 from Flying Ox's account at Bank-4 on or about May 4, 2023.   During this approximate time period, from on or about April 25, 2023 through on or about May 18, 2023, Flying Ox, from its bank account at Bank-6, sent approximately seven wire transfers, totaling approximately $520,266.36, to the Refine Max Bank Account.

ii.    From on or about April 20, 2023 through on or about May 12, 2023, approximately six cashier's checks, totaling approximately $290,155, from approximately four victims, including Victim-2, were deposited into Flying Ox's bank account at Bank-3. During this approximate time period, from on or about April 25, 2023 through on or about May 25, 2023, Flying Ox, from its bank account at Bank-3, sent approximately five wire transfers, totaling approximately $286,526.81, to the Refine Max Bank Account.

<u>VAKIL forms Ox & Tiger and uses it to transfer proceeds of the Fraud Scheme to Refine Max</u>

24.    On or about July 2, 2024, a Magistrate Judge sitting in this District authorized a search warrant (the "iCloud Warrant") for an iCloud account subscribed to in the name of Individual-1, who appears to have been acting at the direction of RATANSHA VAKIL, the defendant, as described below, and who appears to live in Dallas, Texas. As noted above, during the January 2024 Interview, VAKIL stated, in substance and in part, that Individual-1 is his friend in Texas and that VAKIL arranged for Individual-1 to work with SUNIL PATEL, the defendant.

25.    Based on my review of emails obtained pursuant to the Email Warrant, my review of data obtained pursuant to the iCloud Warrant, and my review of bank records, I know the following:

a.    On or about April 26, 2023—*i.e.*, the day after RATANSHA VAKIL, the defendant, emailed SUNIL PATEL, the defendant, and Refine Max Employee-1 the Refine Max Customer Information Form for Flying Ox and Flying Ox began making wire transfers to Refine Max—VAKIL formed a new limited liability company in Oklahoma, Ox & Tiger. VAKIL is the registered agent of Ox & Tiger, and VAKIL and Individual-1 are managing members of Ox & Tiger. The next day, on or about April 27, 2023, VAKIL, according to account opening documents, opened a bank account for Ox & Tiger at Bank-6. The same day, VAKIL and Individual-2, who VAKIL lives with in Chickasha, Oklahoma, *see supra* ¶ 20(a), according to account opening documents, opened a bank account for Ox & Tiger at Bank-3.

b.    Approximately one week later, on or about May 3, 2023, VAKIL and Individual-1 opened a bank account for Ox & Tiger at Bank-2. Based on my review of account opening documents for that account, I know that VAKIL and Individual-1 opened the account at a Bank-2 branch located in the vicinity of Dallas, Texas, where I know, based on publicly available information, Individual-1 resides. In addition, based on my review of documents obtained pursuant to the iCloud Warrant, I know that Individual-1's electronic calendar contained the following entry for May 2, 2023: "Ratan overnight," suggesting that VAKIL traveled to Dallas, Texas, to meet with Individual-1 to open Ox & Tiger's account at Bank-2.

c.    A few days after forming Ox & Tiger, on or about May 1, 2023, VAKIL, using the VAKIL Email Account, emailed PATEL with the subject line "Schedule." The body of VAKIL's email said, "Schedule for May and June 2023. Ratan 😊". Attached to the email was an excel spreadsheet that contained two columns, one labeled "Ratan" and the other labeled with Individual-1's first name. For each day in May and June 2023, the spreadsheet identified whether "Ratan" or Individual-1 could "Receive only," "Receive & Send," or "Send only." For certain dates, the spreadsheet also stated that "Ratan" and Individual-1 were "Busy". From

approximately June 6, 2023 through June 16, 2023, the spreadsheet further stated that "Ratan" was "[o]n cruise." A note on the spreadsheet also provided two UPS store addresses—one address to the attention of Individual-1's first name and last initial in Dallas, Texas, and one to the attention of Individual-2's first name and last initial (*i.e.*, Julia H.) in Chickasha, Oklahoma. For the address in Dallas, the note stated to "[s]end ONLY RBVAssociates [*sic*]," and for the address in Chickasha, the note stated "[c]an send all." Based on my training and experience, as well as my participation in this investigation, I believe that this "Schedule" was a schedule of when Individual-1 and Individual-2 were available to pick up or send victims' cashier's checks, and that, by sending this "Schedule," VAKIL was, in substance and in part, alerting members of the Fraud Scheme that victims should be directed to mail their cashier's checks to either of the two UPS stores.

d.  Based on my review of bank records, I know that on or about May 2, 2023, approximately three cashier's checks, from Victim-1, Victim-3, and one other victim, totaling approximately $143,795 were deposited into Ox & Tiger's bank account at Bank-6, and approximately two cashier's checks, from Victim-1 and one other victim, totaling approximately $97,082, were deposited into Ox & Tiger's bank account at Bank-3.

e.  Approximately three days later, on or about May 5, 2023, Ox & Tiger made its first wire transfers to Refine Max. Specifically, Ox & Tiger, from its bank account at Bank-6, wired approximately $141,997.56 to the Refine Max Bank Account. The same day, Ox & Tiger, from its bank account at Bank-3, also wired approximately $95,868.48 to the Refine Max Bank Account. Based on my review of emails from the VAKIL Email Account, I know that at this point, VAKIL had not sent either PATEL or Refine Max any Know Your Customer documentation for Ox & Tiger, including the Refine Max Customer Information Form that VAKIL had provided for both RBV and Flying Ox before those entities began making wire transfers to Refine Max. As discussed below, VAKIL sent PATEL a Refine Max Customer Information Form for Ox & Tiger only after Refine Max's bank, Bank-5, flagged a transfer from Ox & Tiger to Refine Max as potentially fraudulent, suggesting that VAKIL sent PATEL the Refine Max Customer Information Forms only in an effort to make the transactions between the VAKIL LLCs and Refine Max appear legitimate, and not because the entities were in fact engaged in legitimate business transactions.

f.  A few days later, on or about May 9, 2023, VAKIL, using the VAKIL Email Account, emailed PATEL with the subject line "Banking info." The email contained two attachments, one that provided account and routing numbers for RBV's bank account at Bank-2, as well as one that provided account and routing numbers for a bank account that Ox & Tiger held at Bank-2.

g.  The next day, on or about May 10, 2023, Ox & Tiger wired approximately $45,425 to the Refine Max Bank Account. Based on my review of bank records, I know that approximately one week before that, on or about May 3, 2023, a cashier's check in the amount of $46,000 from Victim-3 was deposited into Ox & Tiger's bank account at Bank-2.

h.  Based on my review of bank records, I know the following about additional wire transfers that Ox & Tiger sent to Refine Max that appear to have been conducted to launder proceeds of the Fraud Scheme:

12

i.        From on or about May 10, 2023 through on or about May 12, 2023, approximately eight cashier's checks, totaling approximately $381,898, from approximately five victims, including Victim-1 and Victim-3, were deposited into Ox & Tiger's bank account at Bank-6. During this approximate time period, from on or about May 11, 2023 through on or about May 15, 2023, Ox & Tiger, from its bank account at Bank-6, sent approximately two wires transfers, totaling approximately $120,905.20 to the Refine Max Bank Account.

ii.        From on or about May 2, 2023 through on or about May 12, 2023, approximately six cashier's checks, totaling approximately $293,820, from approximately four victims, including Victim-1, were deposited into Ox & Tiger's bank account at Bank-3. During this approximate time period, from on or about May 11, 2023 through on or about May 23, 2023, Ox & Tiger, from its bank account at Bank-3, sent approximately three wire transfers, totaling approximately $201,072.43 to the Refine Max Bank Account.

iii.        From on or about July 20, 2023 through on or about August 23, 2023, approximately five cashier's checks, totaling approximately $259,000, from approximately three victims, were deposited into Ox & Tiger's bank account at Bank-2. During this approximate time period, from on or about July 27, 2023 through on or about August 24, 2023, Ox & Tiger, from its bank account at Bank-2, sent two wire transfers, totaling approximately $157,901.25 to the Refine Max Bank Account.

<u>VAKIL emails PATEL ledgers tracking the laundered proceeds of the Fraud Scheme</u>

26.        Based on my review of emails obtained pursuant to the Email Warrant, and my review of bank records, I know the following:

a.        Several days after Ox & Tiger began making wire transfers to Refine Max, on or about May 9, 2023, RATANSHA VAKIL, the defendant, using the VAKIL Email Account, emailed SUNIL PATEL, the defendant, with the subject line "Ledgers for all 3 companies." The email contained tables of information for Ox & Tiger, Flying Ox, and RBV. The tables identified every victim cashier's check that had been deposited into the respective entity's bank accounts since the entity was formed in the cases of Ox & Tiger and Flying Ox and since on or about April 12, 2023 in the case of RBV—i.e., the day after PATEL sent VAKIL an email with the subject line "TEST," followed by an empty Refine Max Customer Information Form for VAKIL to complete. The tables identified the checks by, among other things, the date the check was received, the check number, the victim's name (which was listed under a column labeled "Cust. Name," presumably short for "Customer Name"), and the bank where the check had been deposited.[2] The tables also had a column for "SP," which are the initials of SUNIL PATEL, and a column for "RBV," which are the initials of RATANSHA VAKIL. The columns for SP and RBV contained different dollar amounts, which, when added, totaled the amount of the associated victim's cashier's check. The dollar amount in the "RBV" column was 1.25% of the cashier's check and the dollar amount in the "SP" column was the balance, i.e., 98.75% of the cashier's check. Based on my review of a law enforcement report summarizing the January 2024 Interview, I know that VAKIL told law enforcement agents, in substance and in part, that takes a 1.5% commission of the funds he receives from cashier's checks of "buyers" of gold whom he learns of from PATEL.

---

[2] The table for Flying Ox was missing the victim's name for approximately five of the eleven cashier's checks listed in the table.

b.      In addition, the tables in the email VAKIL sent PATEL on or about May 9, 2023 had a column for "Wire Amount," which contained dollar amounts corresponding to the wire transfers that Ox & Tiger, Flying Ox, and RBV had sent to Refine Max, as well as a column for "Rev booked," which contained dates corresponding to the dates those wires were sent to the Refine Max Bank Account.  For example, the table for Ox & Tiger, part of which is depicted below, identified a cashier's check from Victim-1 in the amount of approximately $49,582 that was deposited into Ox & Tiger's bank account at Bank-3 on or about May 2, 2023.  For that check (in the first row of the table), the table provided as follows: approximately $48,962.23 for SP; approximately $619.78 for RBV; approximately $95,868.48 for Wire Amount; and on or about May 5, 2023 for Rev Booked.  As noted above, *see supra* ¶ 25(e), on or about May 5, 2023, Ox & Tiger, from its bank account at Bank-3, wired approximately $95,868.48 to the Refine Max Bank Account.

| Date Rcv | Chk No | Cust Name | Rec Bank | Amount | Date Dep | Dep Bank | Remarks | 1.25% | SP | RBV | Date Sent | Method | Ref No | Rev booked | Wire Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2-May-23 | 9629403288 | Victim-1 | | $ 49,582.00 | 2-May-23 | Bank-3 | clear | | $ 48,962.23 | $ 619.78 | 5-May-23 | wire | | 5-May-23 | $ 95,868.48 |
| 2-May-23 | 9629403289 | Victim-1 | | $ 47,295.00 | 2-May-23 | Bank-6 | clear | | $ 46,703.81 | $ 591.19 | 5-May-23 | wire | | 5-May-23 | $ 141,997.56 |
| 2-May-23 | 2185736 | | | $ 47,500.00 | 2-May-23 | Bank-3 | clear | | $ 46,906.25 | $ 593.75 | 5-May-23 | wire | | 5-May-23 | $ 95,868.48 |
| 2-May-23 | 2185740 | | | $ 49,000.00 | 2-May-23 | Bank-6 | clear | | $ 48,387.50 | $ 612.50 | 5-May-23 | wire | | 5-May-23 | $ 141,997.56 |
| 2-May-23 | 6704305294 | Victim-3 | | $ 47,500.00 | 2-May-23 | Bank-6 | clear | | $ 46,906.25 | $ 593.75 | 5-May-23 | wire | | 5-May-23 | $ 141,997.56 |
| 2-May-23 | 6704305293 | Victim-3 | | $ 46,000.00 | 3-May-23 | Bank-2 | | | $ 45,425.00 | $ 575.00 | | | | | |

c.      Several days later, on or about May 13, 2023, VAKIL, using the VAKIL Email Account, sent PATEL an email without a subject line and with the message, "As requested. Ratan 😊".   The email contained an attachment labeled "Open ledger," which is an excel spreadsheet (the "May 13 Ledger").  The May 13 Ledger contained similar information to the three ledgers that VAKIL sent PATEL on or about May 9, 2023, including the victim's names, check numbers, the dates the checks were received, the check amounts, the dates the checks were deposited, the banks where the checks were deposited, as well as columns for "SP" and "RBV."  Unlike the ledger VAKIL sent on or about May 9, 2023, the May 13 Ledger did not contain columns for "Wire Amount" or "Rev booked".

d.      The May 13 Ledger noted that two checks, each belonging to the same victim, which had been deposited into RBV's accounts at Bank-1 and Bank-3, were "Bad check[s]".  Based on my review of emails obtained pursuant to the Email Warrant, I know that VAKIL received correspondence from Bank-1 and Bank-3 stating that these checks had been deducted from RBV's bank accounts because they had been flagged as "lost or stolen" or otherwise problematic.  VAKIL, in turn, forwarded this bank correspondence on to PATEL, indicating that VAKIL was reporting to PATEL about the operations of the Money Laundering Scheme.

e.      On or about May 16, 2023 and on or about May 18, 2023, VAKIL, using the VAKIL Email Account, emailed PATEL with additional ledgers, that contained the same or similar types of information as the May 13 Ledger.

14

<u>Banks-5 and -6 flag transactions between Flying Ox, Ox & Tiger, and Refine Max as fraud, and
LOHANI submits fraudulent invoices to the Banks</u>

27.     Based on my review of emails obtained pursuant to the Email Warrant and my
review of bank records, I know the following:

a.      Based on my review of bank records, I know that on or about May 19, 2023,
Bank-6 sent a message to Bank-5 about a wire transfer in the amount of approximately $49,236.75
that Flying Ox, from its bank account at Bank-6, sent to the Refine Max Bank Account, which is
held at Bank-5 ("Wire-1"), *see supra* ¶ 22(e).  Bank-6 told Bank-5, in sum and substance, that
Wire-1 had been flagged as fraud.  Based on my conversations with employees of Bank-6 and my
review of email records, I know that Bank-6 flagged this transaction because a cashier's check in
the amount of approximately $49,860, that had been deposited into Flying Ox's bank account at
Bank-6 a few days before, on or about May 12, 2023, had been flagged as a "Forgery."

b.      Based on my review of bank records, I know that on or about May 19,
2023—*i.e.*, the same day Bank-6 contacted Bank-5—Bank-5 contacted an employee of Refine
Max by phone about Wire-1.  The employee of Refine Max told Bank-5, in sum and substance,
that Wire-1 was not fraud and that it was for the sale of gold bullion from Refine Max to Flying
Ox.

c.      Based on my review of emails obtained pursuant to the Email Warrant, I
know that the same day, on or about May 19, 2023, RATANSHA VAKIL, the defendant, using
the VAKIL Email Account, emailed SUNIL PATEL, the defendant, and Refine Max Employee-
1, saying "Resent as requested."  Attached to the email was VAKIL's Texas driver's license and
the Refine Max Customer Information Form for Flying Ox that VAKIL had previously sent
PATEL and Refine Max Employee-1 on or about April 25, 2023.

d.      Based on my review of bank records, I know that on or about May 22, 2023,
which was a Monday, an employee of Bank-5 emailed LAKHMICHAND LOHANI, the
defendant, at a particular email address that includes part of LOHANI's first name and his full last
name ("LOHANI Email Account-1").[3]  The subject line of the email to LOHANI was: "$49,236.75
incoming wire 05/19 - Flying OX LLC" (*i.e.*, Wire-1).  The body of the email stated: "Hi Lak, I
hope you enjoyed the weekend. Just following up as discussed Friday, can you please scan the
invoice and any back up information that can be provided for this transaction?"  The same day, on
or about May 22, 2023, the employee of Bank-5 sent another email to LOHANI asking specifically
that he send an "invoice that references the dollar amount for the transaction."

e.      Based on my review of emails obtained pursuant to the Email Warrant, I
know that the same day, on or about May 22, 2023, LOHANI, using a different email address that
includes part of LOHANI's first name and his full last name at a Refine Max domain name
("LOHANI Email Account-2"), emailed VAKIL, at the VAKIL Email Account, with the subject

---

[3] On or about December 10, 2024 and January 8, 2025, law enforcement officers met in person
with LAKHMICHAND LOHANI, the defendant, at Refine Max's office in New York City, after
LOHANI requested to speak with law enforcement regarding his purported concerns that he had
engaged in business transactions with individuals involved in fraud.  LOHANI provided the law
enforcement officers with LOHANI Email Account-1 for his contact information.

line "Refine Max Inc.: Invoice #INV638".[4]  The email contained a purported invoice ("Invoice-1") from Refine Max to Flying Ox, dated on or about May 15, 2023, and purporting to itemize Refine Max's sale of one "AuGrain.9999 Various Brands LBMA Good Delivery" to Flying Ox for $49,236.75, *i.e.*, the full amount of Wire-1.  VAKIL responded to LOHANI, stating: "Thank you for this invoice.  For audit purposes please send me a copy of all my invoices from the start for the following companies: Flying Ox LLC[,] Ox & Tiger LLC[,] RBV Associates LLC[.] Regards, Ratan 😊".  Based on my review of bank records, I know that the same day, LOHANI, using LOHANI Email Account-1, sent Bank-5 a copy of Invoice-1, the Refine Max Customer Information Form for Flying Ox, and VAKIL's Texas driver's license.  An image of Invoice-1 that LOHANI emailed to Bank-5 is below:

## INVOICE

Refine Max Inc.

New York, NY 10036
United States

**INVOICE DATE:**
5/15/2023

**INVOICE #:**
INV638

**BILL TO**
Ratansha B. Vakil
Flying Ox LLC

chickasha OK 73018
United States

**SHIP TO**
Ratansha B. Vakil
Flying Ox LLC

chickasha OK 73018
United States

| MEMO | DUE DATE | TERMS | Sales Rep |
|------|----------|-------|-----------|
|      | 5/15/2023 |      |           |

| GOLD PRICE | SILVER PRICE | PALLADIUM PRICE | PLATINUM PRICE | OTHER PRICE | METAL |
|------------|--------------|-----------------|----------------|-------------|-------|
|            |              |                 |                |             |       |

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| AuGrain.9999 | AuGrain.9999 Various Brands LBMA Good Delivery | 24.3 | $2,026.21 | $49,236.75 |
|      |             |     | TOTAL | $49,236.75 |

f.      The same day, on or about May 22, 2023, VAKIL, using the VAKIL Email Account, emailed PATEL with the subject line "copy of bank letter".  Attached to the email was a notice from Bank-6 to Flying Ox that a check in the amount of $49,860 that had been deposited

---

[4] The VAKIL Email Account had not previously exchanged emails with either LOHANI Email Account-1 or LOHANI Email Account-2.

on or about May 12, 2023, was being charged against Flying Ox's account and that the reason for the chargeback was "Forgery."

g.      The same day, on or about May 22, 2023, VAKIL, using the VAKIL Email Account, emailed PATEL with another ledger (the "May 22 Ledger") that contained the same or similar types of information as the previous ledgers that VAKIL had sent PATEL a few days before.  The May 22 Ledger noted that a check in the amount of approximately $49,860 that had been deposited into Bank-6 on or about May 12, 2023 was a "Bad check."

h.      Based on my review of bank records, I know that the next day, on or about May 23, 2023, Bank-5 emailed LOHANI, at LOHANI Email Account-1, requesting information about two more Refine Max transactions that had been flagged by Bank-6.  These included a wire from Ox & Tiger on or about May 15, 2023 in the amount of approximately $87,591.25 ("Wire-2") and a wire from Flying Ox on or about May 18, 2023 in the amount of approximately $41,178.75 ("Wire-3").  Based on my review of emails obtained pursuant to the Email Warrant, I know that LOHANI, using LOHANI Email Account-2, appeared to copy and paste the email from Bank-5 into an email to VAKIL, and VAKIL forwarded LOHANI's email on to PATEL.

i.      The same day, on or about May 23, 2023, VAKIL emailed LOHANI, at LOHANI Email Account-2, a Refine Max Customer Information Form for Ox & Tiger.  Even though Ox & Tiger had wired approximately $551,568.42 to Refine Max prior to on or about May 23, 2023, this was the first time VAKIL provided Refine Max with Know Your Customer documentation for Ox & Tiger.  Similar to the Refine Max Customer Information Forms that VAKIL had provided Refine Max for RBV and Flying Ox, the form for Ox & Tiger that VAKIL sent LOHANI stated that Ox & Tiger was a "Consulting services – advisor" for "bullion," and listed "Alankar Jeweler – New York" and "Karat 22 Jeweler – Houston"—*i.e.*, two of the PATEL Entities—as its references.

j.      Later that day, on or about May 23, 2023, LOHANI, using LOHANI Email Account-1, sent Bank-5 the Refine Max Customer Information Form for Ox & Tiger, as well as two purported invoices:  (1) an invoice ("Invoice-2") that was dated on or about May 15, 2023 and itemized Refine Max's sale of "1 Troy Ounce Fine Gold .9999 Brands" to Ox & Tiger for approximately $87,591.23, *i.e.*, the full amount of Wire-2, and (2) an invoice ("Invoice-3") that was dated on or about May 18, 2023 and itemized Refine Max's sale of "Pamp 1 otz. Gold bar" to Flying Ox for $41,178.75, *i.e.*, the full amount of Wire-3.  Based on my review of emails obtained pursuant to the Email Warrant, I know that the VAKIL Email Account does not contain a copy of either Invoice-2 or Invoice-3, suggesting that these invoices were not created for the legitimate purpose of memorializing the sales of gold bullion from Refine Max but instead for the purpose of providing Bank-6 with fraudulent documentation to make laundering transactions appear legitimate.

k.      On or about May 23, 2023 and on or about May 25, 2023, VAKIL emailed PATEL with additional ledgers, that contained the same or similar types of information as the previous ledgers that VAKIL had sent Patel on or about May 22, 2023, May 18, 2023, May 16, 2023, and May 13, 2023.

28.      Based on my review of bank records, I know that, after Wire-3, none of the VAKIL LLCs ever wired money to Refine Max from their respective bank accounts at Bank-6.  In addition,

after Wire-3, none of the VAKIL LLCs that held accounts at Bank-6 ever deposited additional victim funds into their accounts at Bank-6. Based on my training and experience, I know that outreach about potentially fraudulent activity from banks can cause individuals engaged in money laundering activity to move that activity to different banking institutions.

29.    Based on my review of emails obtained pursuant to the Email Warrant, I know that the VAKIL Email Account does not contain any emails concerning gold, bullion, or other precious metals, other than the invoice described above, as well as four substantially similar invoices that RATANSHA VAKIL, the defendant, received from Refine Max on or about May 25 and May 26, 2023, and the Refine Max Customer Information Forms for the VAKIL LLCs that describe the VAKIL LLCs as transacting in bullion. Based on my training and experience, I know that if a business were engaged in the purchase of gold bullion, that business's principal would likely have email correspondence about such business.

30.    In addition, as discussed further below, based on my review of bank records and emails obtained pursuant to the Email Warrant, I know that after Wires-1, -2, and -3 were flagged as fraudulent, in or about late May 2023 and in or about July 2023, Individual-2 and Individual-1 nominally each formed a new entity, respectively Kaching Tiger and Wings aFire, that sent additional victim funds to Refine Max. However, RATANSHA VAKIL, the defendant, actually controlled those entities and was an account signatory on bank account opening documents for those entities' bank accounts.

### VAKIL and Individual-2 form Kaching Tiger and use it to transfer proceeds of the Fraud Scheme to Refine Max

31.    Based on my review of emails obtained pursuant to the Email Warrant, my review of bank records, my review of records from mobile services providers, and my review of law enforcement reports and records, I know the following:

a.    On or about May 25, 2023, RATANSHA VAKIL, the defendant, using the VAKIL Email Account, emailed LAKHMICHAND LOHANI, the defendant, and Refine Max Employee-1, copying SUNIL PATEL, the defendant, with the subject line "KYC – Kaching Tiger LLC." Attached to the email was an Oklahoma driver's license for Individual-2, as well as a Refine Max Customer Information Form for Kaching Tiger. On the form, Individual-2 was listed as the applicant, although the VAKIL Email Account and VAKIL Phone Number were provided as contact information. "Kaching Tiger LLC" was identified under "Full Legal Name of Business." Similar to the Refine Max Customer Information Forms that VAKIL had provided Refine Max for RBV, Flying Ox, and Ox & Tiger, the form for Kaching Tiger stated that Kaching Tiger, was a "Consulting services – advisor" for "bullion," and listed "Alankar Jeweler – New York" and "Karat 22 Jeweler – Houston"—*i.e.*, two of the PATEL Entities—as its references.

b.    Based on my review of bank records, I know the following about Kaching Tiger:

i.    Kaching Tiger was formed in Oklahoma on or about May 8, 2023. Individual-2 is the registered agent and sole member of Kaching Tiger.

18

ii.    VAKIL's and Individual-2's names appear as account signatories on a bank account for Kaching Tiger that, according to account opening documents, was opened at Bank-6 on or about May 15, 2023.  VAKIL's and Individual-2's names appear as account signatories on a bank account for Kaching Tiger that, according to account opening documents, was opened at Bank-3 on or about May 19, 2023.

c.    Based on my review of bank records, I know the following about wire transfers that Kaching Tiger sent to Refine Max that appear to have been conducted to launder the proceeds of the Fraud Scheme:

i.    From on or about May 19, 2023, through on or about August 10, 2023, approximately five cashier's checks, totaling approximately $251,343, from approximately three victims, including Victim-1, were deposited into Kaching Tiger's bank account at Bank-3. During this approximate time period, from on or about May 31, 2023, through on or about August 22, 2023, Kaching Tiger, from its bank account at Bank-3, made approximately three wire transfers, totaling approximately $199,888.75 to the Refine Max Bank Account.

ii.    Although VAKIL and Individual-2 opened a bank account for Kaching Tiger at Bank-6 on or about May 15, 2023, only one victim cashier's check was ever deposited into that account, a check for approximately $49,895 from Victim-1 on or about May 19, 2023—*i.e.*, the same day that Bank-6 contacted Bank-5, and Bank-5 contacted LOHANI about potential fraudulent transactions between Flying Ox and Refine Max. *See supra* ¶ 27(a), (b).  No wires were ever sent from Kaching Tiger's bank account at Bank-6 to the Refine Max Bank Account.

32.    Based on my review of emails obtained from the Email Warrant, I know that on or about June 5, 2023, SUNIL PATEL, the defendant, emailed RATANSHA VAKIL, the defendant, at the VAKIL Email Account, stating: "When you will be back in action let me know three four days ahead. Send pics also Bye."  According to the "Schedule" that VAKIL had sent on or about May 1, 2023 to PATEL providing the availability of "Ratansha" and Individual-2 to "[r]eceive" or "[s]end," VAKIL was "[o]n cruise" from on or about June 6, 2023 to on or about June 16, 2023. *See supra* ¶ 25(c).  Based on my review of records obtained through the iCloud warrant, I know that Individual-1's iCloud account contains a photograph, dated or about June 11, 2023, of VAKIL and Individual-2 at the helm of a ship, as well as other similar photographs of VAKIL and Individual-1 from the same time period.

### VAKIL and Individual-1 form Wings aFire and use it to transfer proceeds of the Fraud Scheme to Refine Max

33.    Based on my review of emails obtained pursuant to the Email Warrant, my review of data obtained pursuant to the iCloud Warrant, and my review of bank records, I know the following:

a.    On or about July 21, 2023, RATANSHA VAKIL, the defendant, using the VAKIL Email Account, emailed SUNIL PATEL, the defendant, and Refine Max Employee-1, copying the email address for Individual-1.  The subject of the email was "KYC for Refine Max" and the message in the email stated, "Attached is KYC for [Individual-1] representing Wings aFire Consulting LLC.  Thanks & Regards[,] Ratan 😊".  Attached to the email was a Texas driver's

19

license for Individual-1, as well as a Refine Max Customer Information Form for Wings aFire. On the form, Individual-1 was listed as the applicant, and "Wings aFire" was identified under "Full Legal Name of Business." Similar to the Refine Max Customer Information Forms that VAKIL had provided Refine Max for RBV, Flying Ox, Ox & Tiger, and Kaching Tiger, the form for Wings aFire stated that Wings aFire was a "Consulting services – advisor" for "bullion," and listed "Alankar Jeweler – New York"—*i.e.*, one of the PATEL Entities—as its reference.[5]

b.      Based on my review of bank records, I know the following about Wings aFire:

i.      Wings aFire was formed in Texas on or about June 26, 2023. Individual-1 is the registered agent and sole member of Wings aFire.

ii.      VAKIL's and Individual-1's names appear as account signatories for a bank account for Wings aFire that, according to account opening documents, was opened at Bank-2 on or about July 12, 2023. VAKIL's and Individual-1's names also appear as account signatories for a bank account for Wings aFire that, according to account opening documents, was opened at Bank-1 on or about July 13, 2023.

c.      Based on my review of data obtained pursuant to the iCloud Warrant, I know that Individual-1's electronic calendar contained the following entry for July 11, 2023: "Ratan." Individual-1's electronic calendar contained the following entries for July 12, 2023: "[Bank-1]" at a location in Plano, Texas and "[Bank-2]" at another location in Plano, Texas, suggesting that Individual-1 had set aside time to visit Bank-1 and Bank-2 with VAKIL to open the accounts for Wings aFire.

d.      Based on my review of data obtained pursuant to the iCloud Warrant, I know that on or about July 27, 2023, an image of a piece of paper containing information for Refine Max, including the Refine Max Bank Account, Refine Max's website, and Refine Max's address in New York, New York, was saved in Individual-1's iCloud account. This image is the same one that PATEL emailed VAKIL on or about April 17, 2023. *See supra* ¶ 22(e).

e.      Based on my review of bank records, from on or about July 20, 2023, through on or about August 11, 2023, approximately seven cashier's checks, totaling approximately $338,000, from approximately three victims, including Victim-2, were deposited in Wings aFire's bank account at Bank-2. During this approximate time period, from on or about July 27, 2023 through on or about August 22, 2023, Wings aFire, from its bank account at Bank-2, sent approximately two wires, totaling approximately $88,250, to the Refine Max Bank Account.

<u>Refine Max transfers proceeds of the Fraud Scheme to PATEL</u>

34.      Based on my review of bank records, I know the following about payments between Refine Max and the PATEL Entities:

---

[5] Unlike the Refine Max Customer Information Forms for RBV, Flying Ox, Ox & Tiger, and Kaching Tiger, the form for Wings aFire did not list "Karat 22 Jeweler – Houston" as a reference.

a.      From on or about July 20, 2022 through on or about November 3, 2023, Refine Max, in approximately 33 separate transactions, transferred approximately $1,579,807.29 to Patel Jewelers.  During this same time period, Patel Jewelers, in approximately 18 separate transactions transferred approximately $1,665,180.52 to Refine Max.  Approximately ten of the transactions from Refine Max to Patel Jewelers, totaling approximately $453,931.22, were made during the approximate time period that the VAKIL LLCs were transferring victim funds to Refine Max.  During the same time period, Patel Jewelers made approximately two transfers to Refine Max, totaling approximately $134,020.59.

b.      In addition—before the VAKIL LLCs ever began wiring victim funds to Refine Max—from on or about October 20, 2022 through on or about November 15, 2022, Karat 22 transferred approximately $535,297.63 to Refine Max.  And after the VAKIL LLCs stopped wiring victim funds to Refine Max, on or about February 2, 2024, Karat 22 transferred approximately $26,369.40 to Refine Max.

c.      The above-described transactions between, on the one hand, Patel Jewelers and Karat Jewelers and, on the other hand, Refine Max indicate that SUNIL PATEL and LAKHMICHAND LOHANI, the defendants, were independently engaged in business with each other before and after RATANSHA VAKIL's, the defendant's, participation in the Money Laundering Scheme.  In light of that fact and in light of the correspondence described above between, on the one hand PATEL and VAKIL, and, on the other hand LOHANI and VAKIL, there is reason to believe that PATEL introduced VAKIL to LOHANI and did so for the purpose of laundering proceeds of the Fraud Scheme to Refine Max.

<u>VAKIL, Individual-1, and Individual-2 continue using Wings aFire and Kaching Tiger to obtain proceeds of the Fraud Scheme and send them to PATEL</u>

35.      Based on my review of emails obtained pursuant to the Email Warrant, my review of data obtained pursuant to the iCloud Warrant, and my review of bank records, I know that in addition to using the VAKIL LLCs to send victim funds to defendant SUNIL PATEL, the defendant, through Refine Max, RATANSHA VAKIL, the defendant, also used the VAKIL LLCs to send victim funds from the VAKIL LLCs to PATEL directly and indirectly through other entities.  Some of these transactions are described further below.

a.      Based on my review of bank records, I know that on or about July 20, 2023, two cashier's checks, totaling approximately $98,000, both of which belonged to Victim-2, were deposited into Wings aFire's bank account at Bank-2. The next day, on or about July 21, 2023, Wings aFire, from its bank account at Bank-2, wired approximately $96,775 to Patel Trading. Based on my review of data obtained pursuant to the iCloud Warrant, I know that Individual-1's iCloud account contained photographs of the two cashier's checks belonging to Victim-2.

b.      Based on my review of data obtained pursuant to the iCloud Warrant, I know that on or about July 25, 2023, a screenshot was saved on Individual-1's iCloud account that depicted a WhatsApp conversation called "Checks Cleared."  The participants of the conversation appear to include VAKIL (WhatsApp handle "Ratan"), PATEL (WhatsApp handle "Sunil Sonny Sunny Patel"), and Individual-1 (the owner of the iCloud account).  The screenshot, which is depicted below, indicates that Individual-1 messaged a screenshot to the "Checks Cleared" conversation indicating that $96,775 had been sent to Patel Trading:

21



c.      Based on my review of emails obtained from the Email Warrant, I know the following:

i.      On or about August 23, 2023, Individual-2 emailed VAKIL, at the VAKIL Email Account, with the subject line "Kaching Tiger". The content of the email stated: "Kiss!"  Attached to the email was an excel spreadsheet named "Julia's schedule," which had tabs labeled "RBVA," "Flying Ox," "Ox & Tiger," "Kaching Tiger," and "Sample". For each tab, there was a spreadsheet that contained columns similar to those in the ledgers that VAKIL had sent PATEL in or about May 2023.  *See supra* ¶ 26.  This included columns that identified the checks by, among other things, the date the check was received, the check number, the victim's name (which was listed under a column labeled "Cust. Name"), and the bank where the check had been deposited.  There were also columns for "SP" and "RBV," and, as with the ledgers that VAKIL had sent PATEL in or about May 2023, the dollar amount in the "RBV" column was 1.25% of the cashier's check and the dollar amount in the "SP" column was the balance, *i.e.*, 98.75% of the cashier's check.  In addition, the spreadsheets had a column for "Wire Amount," which contained dollar amounts corresponding to the wire transfers that had been transferred out of the entities' respective bank accounts, as well as a column for "Date Sent," which contained dates corresponding to the dates those wires were sent.  In the tab labeled "Sample", which had seven entries, two of the entries did not include a victim's name corresponding to the particular check; instead, the spreadsheet said: "? Ask Sunil".  The tabs labeled "Ox & Tiger" and "Kaching Tiger" had a few entries, but the tabs labeled "RBVA" and "Flying Ox" did not have any entries.

22

ii.        On or about October 11, 2023, Individual-1 emailed VAKIL, at the VAKIL Email Account, with the subject line "update." The content of the email stated: "update". Attached to the email was an excel spreadsheet named "Update" that contained substantially the same type of information as the ledgers that VAKIL sent PATEL in or about May 2023 and that Individual-2 sent VAKIL in or about August 2023, as described above.

iii.       On or about March 11, 2024, Individual-1 emailed VAKIL, at the VAKIL Email Account, with the subject line "Wings Excel." The attachment, which is named "2023 Wings Ledger" is an excel spreadsheet with a tab named "Proj Sunny." Based on my review of data obtained pursuant to the iCloud Warrant, I know that PATEL's email address and WhatsApp account populate in Individual-1's saved contact for PATEL as "Sunil Sonny Sunny Patel." *See supra* ¶ 35(b). The spreadsheet that Individual-1 emailed VAKIL on or about March 11, 2024 identifies every victim check that was deposited into Wings aFire bank accounts from on or about July 20, 2023 through on or about December 12, 2023. For each of these checks, the spreadsheet contains substantially the same type of information as the update spreadsheet that Individual-1 sent VAKIL on or about October 11, 2023, as well as the ledgers that VAKIL sent PATEL in or about May 2023 and that Individual-2 sent VAKIL in or about August 2023, as described above. However, the "2023 Wings Ledger" also contains a column labeled "Remarks," which identifies the particular entity that received a particular wire transfer from Wings aFire. For example, for approximately two cashier's checks, totaling approximately $98,000, that were deposited into Wings aFire's bank account at Bank-2 on or about July 20, 2023, the spreadsheet indicates that those funds were eventually wired, less approximately 1.25%, to Patel Trading on or about July 21, 2023. In addition to Patel Trading and Refine Max, there are four additional entities listed under the "Remarks" column as having received from Wings aFire wire transfers comprised of victim funds ("Entities1-4").

d.        Based on my review of bank records, I know that, from at least in or about June 2023 through in or about March 2024, Entities 1-4 received hundreds of thousands of dollars both from the VAKIL LLCs, including Wings aFire, Kaching Tiger, Ox & Tiger, and RBV, as well as from the PATEL Entities, including Patel Jewelers and Karat 22, indicating that Refine Max was not the only entity that PATEL and VAKIL LLCs sent money to in order to launder proceeds of the Fraud Scheme.

<u>VAKIL creates new entities that obtain additional proceeds of the Fraud Scheme</u>

36.        Based on my review of emails obtained pursuant to the Email Warrant, my review of data obtained pursuant to the iCloud Warrant, and my review of bank records, I know that in or about October 2023, RATANSHA VAKIL, the defendant, formed three additional limited liabilities companies that he used to deposit victim funds. Specifically:

a.        On or about October 11, 2023, Individual-1 forwarded VAKIL an email from the Texas Secretary of State that states "Name Availability" and that provided a list of the following: "Telluride Builders LLC," "Aspen Builders LLC," and "wings afire."

b.        Based on my review of bank records and publicly available information, I know that Ox Trading was formed in Texas on or about October 5, 2023. VAKIL is the registered agent for Ox Trading. Account opening documents for Bank-2 indicate that on or about October 16, 2023, VAKIL opened a bank account for Ox Trading at Bank-2. That account was closed on

23

or about January 29, 2024.  From on or about October 18, 2023 through on or about December 8, 2023, at least five victim checks, totaling approximately $327,347, from approximately four victims, were deposited into Ox Trading's bank account at Bank-2.

        c.     Based on my review of banks records and publicly available information, I know that, like Ox Trading, Ox Consulting was formed in Texas on or about October 5, 2023. Account opening documents for Bank-2 indicate that on or about October 16, 2023, VAKIL and Individual-1 opened a bank account for Ox Consulting at Bank-2.  That account was closed on or about January 29, 2024, *i.e.*, the same day the Ox Trading account was closed at Bank-2.  From on or about October 18, 2023 through on or about December 4, 2023, at least seven victim checks, totaling approximately $347,370, from approximately three victims, including Victim-2, were deposited into Ox Consulting's bank account at Bank-2.

        d.     Based on my review of bank records, I know that Telluride Builders was formed in Oklahoma on or about October 12, 2023.  VAKIL is the registered agent of Telluride Builders and is listed as its 100% beneficial owner on bank account opening statements for a bank account that VAKIL and Individual-2, according to account opening documents, opened for Telluride Builders at Bank-3 on or about October 13, 2023.  Account opening documents from Bank-2 indicate that on or about October 26, 2023, VAKIL opened a bank account for Telluride Builders at Bank-2.  That account was closed on or about January 29, 2024, *i.e.*, the same day the Ox Trading and Ox Consulting accounts were closed at Bank-2.  From on or about October 16, 2023, through on or about November 22, 2023, at least nine victim checks, totaling approximately $556,070, from approximately three victims, were deposited into Telluride's bank accounts at Bank-2 and Bank-3.

37.    Based on my review of bank records, I know that Ox Consulting and Telluride Builders each wired funds to at least one of Entities 1-4 from in or about November 2023 through in or about December 2023.

*[Intentionally blank]*

24

WHEREFORE, I respectfully request that a warrant be issued for the arrest of SUNIL PATEL, RATANSHA VAKIL, and LAKHMICHAND LOHANI, the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.

S/ by the Court with permission
_____
ANDREW LEWIS
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this  10th  day of March, 2025.

_____
THE HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York

25